**UNION PACIFIC RAILROAD COMPANY**

v.

**The UNITED STATES.**

No. 688–71.

United States Court of Claims.

Feb. 18, 1976.

Martin Sterenbuch, Washington, D. C., attorney of record, for plaintiff; Gajarsa, Liss & Sterenbuch, Washington, D. C., of counsel.

John Charles Ranney, Washington, D. C., with whom was Asst. Atty. Gen., Rex E. Lee, Washington, D. C., for defendant.

Before COWEN, Chief Judge, DURFEE, Senior Judge, and KUNZIG, Judge.

## OPINION

**PER CURIAM:**

This case comes before the court on exceptions of the parties to the recommended decision of Senior Trial Judge Mastin G. White, filed March 25, 1975, pursuant to Rule 134(h), having been submitted on the briefs and oral argument of counsel. Upon consideration thereof, since the court agrees with the recommended decision, as hereinafter set forth *, it hereby affirms and adopts the same as the basis for its judgment in this case. It is, therefore, concluded that plaintiff is entitled to recover and judgment is entered for plaintiff against defendant in the sum of two hundred thirty-six thousand five hundred nineteen dollars and eighty-three cents ($236,519.83).

## OPINION OF TRIAL JUDGE

WHITE, Senior Trial Judge:

The plaintiff railroad company is requesting additional compensation for freight transportation services which it performed for the defendant during the 1968–72 period as the final and delivering carrier on carload shipments of grained ammonium nitrate originating at

---

* Whereas the court adopts the trial judge's separate findings of fact, which are set forth in his opinion filed March 25, 1975, they are not printed herein since such facts as are necessary to the decision are contained in his opinion.

various points in the United States and destined for the Cornhusker Army Ammunition Plant ("Cornhusker"), Grand Island, Nebraska. The grained ammonium nitrate was procured by the defendant for use in the manufacture of bombs at Cornhusker. The bombs were loaded with a Minol-2, an explosive which consists of 20 percent aluminum, 40 percent TNT, and 40 percent ammonium nitrate.

The plaintiff billed the defendant for the transportation services previously mentioned on the basis of a freight rate determined for the respective shipments under Item 22400 of the Uniform Freight Classification ("UFC").[1] This item appears under the generic heading of "Chemicals" and covers "Ammonium Nitrate, in bags, barrels or boxes; also CL [carload], in bulk in paper lined cars."

In accordance with 49 U.S.C. § 66, the plaintiff's bills for the transportation of the grained ammonium nitrate were duly paid by the defendant. Subsequently, however, the defendant (acting through the General Accounting Office) determined that the plaintiff's bills involved overcharges; and the defendant recouped the amounts of such alleged overcharges by making deductions from sums admittedly due the plaintiff in connection with transportation services performed for the defendant on other commodities. It was the defendant's conclusion that the shipments of grained ammonium nitrate should have been rated under listings of "ammonium nitrate" which appear in various commodity tariffs applicable to "fertilizer and fertilizer materials."

It is my opinion that the defendant's action with respect to the alleged overcharges was erroneous, because the evidence in the record shows that *grained* ammonium nitrate cannot reasonably be classified as a fertilizer or a fertilizer material.

Dry ammonium nitrate is commercially produced and sold in two forms: as grained ammonium nitrate and as prilled ammonium nitrate (*i. e.*, in the form of prills, or small round pellets). The manufacturing processes used in the production of the two types of ammonium nitrate are quite different.

Although the chemical properties of the two types of dry ammonium nitrate are identical, there are differences between the two types that are significant from the standpoint of the present litigation:

(1) The market purchase price of grained ammonium nitrate is approximately double the market purchase price of prilled ammonium nitrate.

(2) A particle of grained ammonium nitrate is about $\frac{1}{25}$th the size of ammonium nitrate prill, so that grained ammonium nitrate is a powdery substance of fine particles.

(3) Grained ammonium nitrate is more flammable and more easily exploded than prilled ammonium nitrate.

(4) Because of the fineness and hydroscopicity of its particles, grained ammonium nitrate has a tendency to solidify into blocks or lumps during the course of transportation or storage, whereas prilled ammonium nitrate does not have this tendency.

When applied to the soil, grained ammonium nitrate and prilled ammonium nitrate have, basically, the same nutrient value for the promotion of plant growth. However, because of the characteristics of grained ammonium nitrate outlined in the preceding numbered paragraphs of this opinion, particularly the comparatively high cost of purchasing it and the difficulty involved in pulverizing the solidified blocks or lumps into a free-flowing material at the time of use, it is not feasible under ordinary circumstances to use grained ammonium nitrate as a fertilizer or fertilizer material.[2] Conse-

1. In some instances, the plaintiff based its charges on lower Section 22 quotations or "Freight All Kinds" tariffs.

2. The only evidence in the record of instances when grained ammonium nitrate was actually used for fertilizing purposes involved extraordinary circumstances, including the furnishing of the material to the users free of charge (except for transportation costs).

quently, grained ammonium nitrate is not produced or sold for fertilizer use. Rather, it is produced and sold for use as a component of dynamite, explosives, and blasting agents.

On the other hand, prilled ammonium nitrate is commonly produced, sold, and used as a fertilizer,[3] either by itself as a single fertilizer or as part of a blended fertilizer that also contains phosphorus or potash, or both.

Therefore, the term "ammonium nitrate" appearing in commodity tariffs that are applicable to "fertilizer and fertilizer materials" undoubtedly includes prilled ammonium nitrate, but it cannot reasonably be construed as including *grained* ammonium nitrate. This being so, the defendant erred in the present case when it took the position that the fertilizer commodity tariffs were applicable to the shipments of grained ammonium nitrate involved here.

For the reasons previously stated in this opinion, the plaintiff is entitled to recover. In this connection, the parties have previously stipulated that the amount due the plaintiff will be $236,-519.83 in the event of a determination by the court that the fertilizer commodity tariffs are inapplicable. Accordingly, judgment should be entered for the plaintiff in the amount of $236,519.83.

## CONCLUSION OF LAW

Upon the findings of fact and the foregoing opinion, which are adopted by the court and made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is entitled to recover, and it is therefore adjudged and ordered that the plaintiff recover of and from the United States the sum of two hundred thirty-six thousand five hundred nineteen dollars and eighty-three cents ($236,519.83).

3. Prilled ammonium nitrate is also used sometimes as a component of blasting agents.